## LATIMER v. MARCHBANKS.

1. PRACTICE.—No error in making final decree, without further testimony, upon coming in of surveyor's report under previous order settling issues, nothing in return showing need of further testimony.
2. FINDING OF FACTS by Circuit Judge as to amount of land purchased sustained.
3. DAMAGES—SPECIFIC PERFORMANCE.—Only such damages as may have been done to the freehold, and such compensation as may be just for the use and detention of the premises, are permissible in actions of specific performance.
4. IN SPECIFIC PERFORMANCE the exact contract as alleged need not always be proved, but it is sufficient, if it is substantially proven.
5. ESTOPPEL.—A vendor knowing that vendee is clearing land and building a house on land thought by him to be within the purchase, and not then objecting, is afterwards estopped from saying this land was not within the boundaries purchased.

Before ALDRICH, J., Greenville, April, 1898.    Modified.

Action by Joseph Latimer against Peter C. Marchbanks
and J. B. Kirkendoll.    The order appealed from is as fol-
lows:

"It appearing that his Honor, O. W. Buchanan, the Judge
who presided at the last preceding term of this Court, passed
an order herein, filed on the 12th day of January, 1898, pro-
viding that a survey be made of the premises in dispute
herein, showing the portion of land on plat A, and twenty
acres of land represented on plat B; and that in pursuance of
said order, the plaintiff herein nominated J. M. Cureton, sur-
veyor on his behalf, and the defendant, P. C. Marchbanks,
nominated E. M. Hunt, surveyor on his behalf, and that said
surveyors have made the survey directed by said order, and
made a plat thereof, and filed the same with the clerk of this
Court, showing the portion of said land on plat A, and show-
ing that the same contains twenty acres, and showing twenty
acres on plat B, which includes the double log cabin and all
the cleared land on said plat B, the twenty acres shown by
them on plat B being designated by them on the said plat
made and filed by them as plat B, and the land shown by
them on plat A being designated by them on said plat filed by
them as plat A; and said plats A and B on said plat filed by
said surveyors showing forty acres, designated by metes and
bounds and courses and distances.

"It is adjudged, that the land included in plats A and B
on said plat made and filed by said surveyors, include and
represent the land sold by said Peter C. Marchbanks to B.
F. Perry, and which was bought by the plaintiff at foreclos-
ure sale.

"It is further ordered and adjudged, that D. P. Verner,
Esq., master in and for said county of Greenville, prepare a
good and sufficient fee simple deed of conveyance from said
Peter C. Marchbanks to the plaintiff herein of the land in-
cluded in said plats A and B on the said plat, made and filed
by said surveyors, showing the courses and distances and

metes and bounds thereof appearing on said plat, and including both said A and B, to wit: beginning at * * * * that said master prepare said deed within ten days from the rising of this Court, and hold it in his office for execution by the said Peter C. Marchbanks, and that the said Peter C. Marchbanks within fifteen days from the rising of this Court execute the same in the presence of two subscribing witnesses, and deliver the same after its execution to said master, to be delivered by him to the plaintiff herein; and that the said Peter C. Marchbanks and J. B. Kirkendoll, immediately upon the execution and delivery of the said deed as aforesaid, deliver to the plaintiff the possession of all the land covered by said deed.

"It is further ordered, that the defendants, Peter C. Marchbanks and J. B. Kirkendoll, pay the costs and disbursements of the plaintiff in this action; also, that they pay the plaintiff the sum of $75, the amount of damages found against them by the master in his report herein, and the plaintiff is hereby given leave to enter up judgment against said defendants for said costs, disbursements and damages, and issue execution against them therefor."

The defendants except on the following grounds:

"1. Because his Honor erred in holding that the former order of his Honor, O. W. Buchanan, filed in this cause on the 13th day of January, 1898, was conclusive of the whole matter, except as to the location of the twenty acres of land on plat 'B,' and that as the survey had been filed in accordance with Judge Buchanan's order, he was bound to sign the decree; whereas, it is respectfully submitted that he should have examined into the correctness of said survey.  2. Because the survey cut off about thirteen acres of land claimed in the complaint, and this was the very land which plaintiff alleged, and the proof showed, had been damaged; his Honor, therefore, erred in refusing to allow defendants to introduce evidence along this line to reduce the amount of damages.  3. Because the said Circuit Judge, without hear-

ing one word of evidence, and against defendants' protest, adjudged that the land included in plats A and B on said plat, made and filed by said surveyors, include and represent the land sold by said Peter C. Marchbanks to B. F. Perry, and which was bought by plaintiff at foreclosure sale. 4. Because the said Judge erred in ordering the master, D. P. Verner, Esq., to make a deed to the land in said order described, for the following reasons: (*a*) Because the complaint was to compel the defendant, Marchbanks, to specifically perform a contract to convey to plaintiff a certain tract of land described therein by metes and bounds; the evidence, report of the master and Judge Buchanan's order, all show that the defendants never agreed to convey the land described in said complaint, but did agree to convey the land described in defendants' answer and included within certain well defined boundaries. (*b*) Because in no event could such a decree be made in this action without previously amending the complaint, and no such amendment was ever asked for or allowed. 5. Because the damages were fixed by the master under the impression that the whole of the land described in the complaint belonged to the plaintiff, the resurvey cut off about thirteen acres to defendants; defendants should, therefore, have been allowed to introduce evidence showing that this was the very portion of the land described in the complaint upon which the alleged damage was committed."

*Messrs. Blythe & Blythe,* for appellant, cite: *Contract not clearly proven:* 70 Am. Dec., 458; 1 McC. Ch., 38; 2 Hill Ch., 426; 7 Rich. Eq., 385; 13 Rich. Eq., 250; 16 S. C., 192; 48 S. C., 307; 53 S. C., 363; 29 S. C., 598; Rice Eq., 55. *Respondent could not enforce without amending complaint:* 48 S. C., 307.

*Messrs. J. A. McCullough* and *Shuman & Dean,* contra. Mr. Shuman cites: *No error for Judge Aldrich to refuse to modify the order of Judge Buchanan:* 3 S. C., 438. *No fatal variance, therefore, no amendment necessary:* Code,

190; 33 S. C., 562; 6 S. C., 130; 17 S. C., 589. *Court may disregard immaterial variances:* 3 S. C., 401; 9 S. C., 330. *Contract sufficiently proven:* 139 Pa. St., 378; 3 Ia., 452; Rice Eq., 55.

April 9, 1900. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff, as purchaser under the vendee, B. F. Perry, brings this action for specific performance of a contract for the sale of land against the vendor, Marchbanks, and his tenant, Kirkendoll. The complaint describes the land alleged to be the subject of the contract by metes and bounds. The answer denies any contract as to the tract described in the complaint, but admits a contract to convey the tract described in the answer, which is a part of the tract mentioned in the complaint. The real point of controversy was as to the correct location of the northern boundary, which, if located according to the plaintiff's contention, would enclose fifty-one acres, and if located according to defendant's contention, would enclose only twenty acres. Besides this, there is an issue as to damages claimed.

The master, to whom the issues were referred, made the following report: "During the year 1887, B. F. Perry purchased of the defendant, Peter C. Marchbanks, forty acres of unimproved land, situated on the north side of Paris Mountain, in the county (of Greenville) and State aforesaid. Perry paid Marchbanks for this land and went into possession, but never received a deed for the same. No deed was executed at the time of the purchase, because of the fact that all the boundaries of the land were not then definitely known. Perry swears that he paid $400 for the property; Marchbanks testifies that he only paid $357.83 for it. Whether the greater or less price was paid, is of little consequence in determining the issues here joined, the smaller sum being full value for the property. Immediately after going into possession of this property, Perry built two houses thereon, and brought into cultivation a considerable

portion of the land. One of the houses was a double log structure. During the erection of this last named building the defendant, Marchbanks, visited the premises, and stated to a carpenter who was at work thereon that he had sold the property to Perry, and that the line ran about 150 feet below the house, or north thereof. Perry cleared on that side some eight or ten acres of land, and put it in cultivation. During the clearing, Marchbanks visited the premises and saw the work going on. Perry continued in possession till the 6th day of January, 1896, when the property was sold by the master at public outcry to the highest bidder, under judgment of foreclosure. At this sale the property was bid off by the plaintiff for the sum of $205, and he received from the master a good and sufficient deed of conveyance for the same. Latimer then went into possession, and remained in undisturbed possession till some time in the fall or winter of 1896, when the defendant, Marchbanks, put his codefendant, Kirkendoll, into possession of the log house above mentioned, and claimed to be the owner of said house, together with the land on which it is located. Marchbanks admits that he sold Perry so much of the lands in question as lie south of the line laid down on the plat in evidence as running from a stone on the Irvine lines 51 3-4, w. to o. x s. s. Marchbanks' corner. He claims that he sold Perry a tract containing forty acres, more or less, and alleges that all that tract lies south of the above mentioned line. The plat which has been put in evidence shows that the last named portion contains about twenty acres, whereas Marchbanks admits that he sold the property for forty acres, more or less, and alleges that at the time Perry built and cleared below the line mentioned, he was in ignorance of the location of that line. Perry claims that he and Marchbanks rode around the land at the time of the purchase, and that the latter then pointed out the boundaries to him. The plaintiff has procured the services of E. M. Hunt, Esq., a surveyor, and had a plat made of the premises in question. This plat is in evidence. That portion of it which is marked 'A' is conceded to cover

the Perry purchase.   The portion marked 'B' is the disputed portion.   This latter portion was run out in accordance with the boundaries which Perry swears that Marchbanks pointed out to him as enclosing the premises at the time of the purchase.   According to this plat, the whole tract claimed by the plaintiff contains about fifty-one acres.   Perry claims to have purchased forty acres.   Marchbanks admits that he sold a tract which he then thought contained forty acres. Perry and one other witness testifies that at the time of the purchase, Marchbanks agreed that in case the tract sold should turn out not to contain so much, that he would make out the deficiency from lands of his adjoining this in question.   This is a very reasonable proposition for Marchbanks to have made under the circumstances, and I find as a matter of fact that at the date of the sale by the said Peter C. Marchbanks to the said Perry, he did agree with him to make up the deficiency, which might arise upon a survey of the premises, and bind himself to convey to the said Perry full forty acres of land.   While there is some doubt as to the boundary lines of a portion of this land, there can be no doubt that the double log cabin built by Perry and the land cleared by him north thereof, are within that boundary pointed out by Marchbanks to Perry when he sold him that land.   That double log cabin and the cleared fields are two very stubborn facts.   Whatever may have been the extent of Marchbanks' ignorance as to the boundary of his land, he cannot be allowed to sell property, receive ample pay for it, permit the purchaser to build and clear, and receive the rents for all these years, and then seize upon it and appropriate it to his own use.   His conduct in putting the purchaser in possession of this land, and standing by and allowing him to make improvements thereon, estops him from denying the purchaser's title.   Whilst this is true, I do not think the plaintiff is entitled to recover all the lands represented on plat 'B.'   The description of the premises under which Perry bought was necessarily indefinite.   It was not possible to fix the exact extent of the boundaries at the time the con-

18—57

tract was made. This being true, I am of the opinion that the boundaries pointed out by Perry includes a greater amount of land than Marchbanks intended to convey. I cannot, therefore, find that the plaintiff is entitled to recover all the land sued for. I do find, however, that the plaintiff having purchased the interest of B. F. Perry in the premises in question, is entitled to recover the same of the defendant. That said premises includes all the lands described in plat 'A,' containing twenty acres, and in addition thereto, twenty acres of the lands described in plat 'B,' embracing that part of the same on which the double log house is situated, and that part thereof which has been cleared. I, therefore, respectfully recommend that some competent surveyor be authorized by the Court to go upon the premises, survey the same and make a plat thereof, embracing that portion of the premises above described, to wit: that portion represented on plat 'A,' and twenty acres of the land represented on plat 'B.' This last named to include the double log house and the cleared land on last named plat. That he certify the same to this Court. That when a proper description of said premises is had as above provided, the defendant, Peter C. Marchbanks, be required to execute and deliver to the plaintiff, Joseph P. Latimer, a good and sufficient deed of conveyance therefor. The only question that remains to be considered is that of damages sustained by plaintiff by reason of the unlawful act of the defendant, Marchbanks, and his codefendant, Kirkendoll. The only testimony on this point is that of the plaintiff himself. He fixes the amount of damages at from seventy-five to one hundred dollars. I find the amount of damages to be the sum of seventy-five dollars, and recommend that plaintiff have judgment against defendants, Peter C. Marchbanks and J. B. Kirkendoll, for said sum of money, and the costs of this action."

Both sides excepted to the master's report. The case was heard by his Honor, O. W. Buchanan, at the December, 1897, term of the Court of Common Pleas for said county, who on the 13th day of January, 1898, filed the following

order: "It appears to me, after some time spent on the subject, that Mr. Perry did have the interest by purchase found by the master, although the boundaries pointed out by him includes a greater amount of land than it seems Marchbanks intended to convey. It is ordered, that each party (one for plaintiff, one for defendant, who, if they cannot agree, may call in a third,) do nominate a surveyor, who shall go upon the land, survey the same and make a plat thereof, showing that portion represented on plat 'A' and twenty acres of the land represented on plat 'B.' That they certify to this Court the result. That upon the coming in of said report, a conveyance be required to be made upon the lines indicated from the information given pursuant to an order of the Court, which may be made by the Court at that time, requiring Peter Marchbanks to execute and deliver to the plaintiff a good and sufficient deed of the premises. Nothing, however, contained in this order will be taken as binding such Court, if from the showing established by the report of the surveyor a different disposition should be made of this matter. It is intended merely to pass on the matter at this stage. Subject to this condition, I find the matters of fact and conclusions of law should be confirmed as reported by the master. I think, however, no final disposition of the matter should be made until the coming in of the report, when a final order should be passed."

The defendants filed exceptions to this order of Judge Buchanan, assigning error: (1) in not dismissing the complaint because the contract alleged was not established; (2) in decreeing a conveyance for land outside of the boundaries admitted in defendant's answer; (3) in finding as a matter of fact that defendant agreed that if the forty acre tract did not contain full forty acres, that the defendant would make up the deficiency out of other lands; (4) in enforcing such promise, if made, in this action; (5) in holding defendant estopped from denying plaintiff's title to the land outside of the boundaries sold, as claimed by the defendants; (6) in

allowing damages to plaintiff at all; (7) the damages allowed were excessive.

Pursuant to the order of Judge Buchanan, the parties each selected a surveyor, and on a day appointed, the parties with the surveyors met on the land and a survey was made, and on April 4th, 1898, said surveyors filed their return with a plat. The case was thereafter heard by Judge Aldrich. The plaintiff claiming that the return and plat of the surveyors was in accordance with the order of Judge Buchanan, and without offering other testimony in reference thereto, asked for a final decree in accordance with Judge Buchanan's order. Defendants contended that before Judge Aldrich could pass such a decree, that the whole case should be heard anew, or at least that the plaintiff be required to examine witnesses to ascertain the correctness of the said survey. Defendants also contended that the second survey excluded about thirteen acres which the first survey allowed plaintiff; that the master in estimating damages suffered by plaintiff had included said thirteen acres, and defendant should be allowed to examine witnesses to show what part of said damages were for damages to said thirteen acres, and, therefore, should be excluded from the damages awarded to plaintiff. These objections were overruled, and Judge Aldrich made decree for specific performance, which with the exceptions thereto may be seen in the official report. The foregoing statement is somewhat lengthy and tedious, but it will serve to make clear the application of the brief remarks we shall make on the questions involved.

1. Judge Aldrich committed no error in making final decree for specific performance on the return and plat of the surveyors without examining further into the correctness of the survey. On its face there was nothing to suggest that it was not what it purported to be, in accordance with the directions of Judge Buchanan's order. It was not necessary that plaintiff should offer evidence as to the correctness of the survey, and defendant tendered no evidence in impeachment of it. Defendants' own chosen

surveyor had certified to its correctness, and defendants were present at the survey.

2. The order of Judge Buchanan, confirming the matter of fact and conclusions of law reported by the master, ordering a survey and plat covering the twenty acres, tract A, as to which there was no dispute, with twenty acres on plat B, embracing the part containing the buildings and clearings by Perry, and further ordering that upon the coming in of said report by the surveyors, a conveyance be required to be executed by Marchbanks to the plaintiff according to the boundaries reported, left nothing for Judge Aldrich to do but ascertain whether "from the showing established by the report of the surveyors a different disposition should be made of this matter." Subject to this condition *only,* the report of the matter was confirmed. The "final disposition of the matter," which was to await the coming in of the surveyor's report, was a formal order carrying his judgment into effect, when the northern boundary of the land contracted for was platted in accordance with the principle of location reported by the master and confirmed by Judge Buchanan. The surveyors did nothing but make certain by course and distance a boundary which the Court by its decree upon the evidence made capable of being made certain. All boundaries but one being established, it was a mere matter of calculation to so close the plat as to include the twenty acres whereon were situated plaintiff's cleared land and building. If, therefore, there was no error in conclusions of the master which were confirmed by Judge Buchanan, we do not think any error can be imputed to the order of Judge Aldrich, which merely carried out such conclusion.

3. This makes it necessary to consider the exceptions to the order of Judge Buchanan. These exceptions as to matters of fact raise only two questions: (1) whether there was error in finding that Marchbanks agreed with Perry, that if the tract sold to him did not contain forty acres, that he would make up that amount out of the other lands of his; (2) as to the amount of damages.

We are quite satisfied that the evidence fully sustains the first finding.   Indeed, we would see no reason to reverse the concurring findings of the master and Circuit Court, even if there were specific exceptions before us challenging such findings as to all matters of fact except the matter as to the amount of damages allowed.   In this matter we think there was error.   The only testimony offered on this subject is exceedingly indefinite and uncertain.   In addition to evidence showing that Kirkendoll, the tenant of Marchbanks, had moved into the log house built by Perry and was cultivating some of the cleared land, the plaintiff testified as follows: "I had some wood cut upon that land cleared by Marchbanks.   I did not get all the wood after I had cut it; some of it is on the land now and some of it has been moved off.   I had this man, Hiter, employed and paid him to cut six or seven cords.   The land that Marchbanks claims is first rate land, the best land on the place.   I have been badly damaged by Mr. Marchbanks taking the place from me; I think I have been damaged seventy or a hundred dollars.   In estimating the damages, I take into consideration the wood I lost."   Injury resulting from the removal of wood cut and corded by plaintiff, even if it clearly appears that Marchbanks removed it, would not be such damages as may be compensated for in this action for specific performance.   Only such injury as Marchbanks may have done to the freehold and such compensation as may be just for the use and detention of the premises, are proper subjects of injury in this action.   There was no satisfactory evidence, if any at all, as to the value of the occupation and use of the premises.   Besides this, the amount of damages was ascertained in view of all the land claimed by plaintiff; whereas, by the judgment of the Court, the defendant is required to convey eleven acres less than claimed.   For all we can say from the evidence, the occupation and use of these eleven acres may have entered, and doubtless did enter, into the plaintiff's estimate of damages.   For these reasons, we reverse the judgment in so far as it adjudges the pay-

ment of damages to the amount of seventy-five dollars. The Court of Equity having acquired jurisdiction, will proceed to do justice and render full relief according to the rights of the parties with respect to the subject matter, the land. Therefore, in reference to the matter of damages or compensation, the case should go back to the master, that the defendants may account before him for the rental value of so much of the premises described in the decree of Judge Aldrich· as defendants took from the possession of plaintiff from the time of dispossession, and for any substantial injury to the freehold. *Hampton* v. *Snipes,* 1 DeSaus. Eq., 125.

4. In all other respects we concur with the conclusions of law by the master and Circuit Court. It is not necessary to a decree for specific performance that a plaintiff shall establish the exact contract as alleged. The correct rule is thus stated in 22 Enc. Law, 909: "Specific performance is an equitable remedy which compels the performance of a contract in the precise terms agreed upon, or such a substantial performance as will do justice between the parties under the circumstances of the case." See, also, *Alexander* v. *McDaniel,* 57 S. C., 252. In this case, while the exact contract alleged was not established, the plaintiff did establish a contract included within the contract alleged, as the less is within the greater, and its terms were definite in all particulars, except one, and that was capable of being made definite and certain. The case as made did not require any amendment of the complaint, as argued by appellant.

We are satisfied with the ruling below as to the matter of estoppel. The evidence shows that Marchbanks knew that Perry was building the house and clearing land on the disputed twenty acres, and that he was cultivating it, and yet made no objection that the land was not within the contract. This estops him now to say that such land is not embraced in the contract.

The judgment of the Circuit Court, in so far as it decrees specific performance by the execution of the deed for the premises therein described, is affirmed, but, in so far as judg-

ment was given for seventy-five dollars damages against defendants, it is reversed, and the case is remanded for such further proceedings as may be proper in accordance with the views herein announced.